**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRUCE L. NEFF**<br><br>**v.**<br><br>**UNUM PROVIDENT CORPORATION, et al.** | **CIVIL ACTION**<br><br>**NO.  14-6696** |

<u>**MEMORANDUM RE DEFENDANTS' MOTIONS TO DISMISS**</u>

Baylson, J.                                                                August 19, 2014

**I.      Introduction**

This case arises from a contractual relationship between an attorney, Plaintiff Bruce L. Neff ("Neff"), and his client, Defendant Satya Bandhu Arya ("Arya").   In 2002, Neff filed a complaint on Arya's behalf against Defendants UNUM Provident Corporation, UNUM Life Insurance Company, and Provident Life and Accident Insurance Company (collectively, "UNUM"), alleging UNUM failed to pay Arya disability insurance benefits.   In order to pursue the claim against UNUM, Neff and Arya entered into a Contingency Fee Agreement.   However, UNUM allegedly advised Mr. Arya to withdraw the proceeding in exchange for payment of the disability benefits he claimed he was owed.   According to Neff's Complaint, this "settlement" resulted in the loss of his contingency fee.   Twelve years later, Neff is suing UNUM for:

a.   Intentional Interference with Contractual Relations (Count I);[1]

b.   Conversion (Count II), based on defendants' unlawful possession of his contingent fee;

c.   Fraud (Count III);

d.   Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c) (Count IV); and

---

[1] This claim is only against UNUM.

e. Civil Conspiracy and Concert of Action (Counts V and VI).

The Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 due to the RICO violations alleged in Neff's Complaint, and supplemental jurisdiction Neff's state-law claims because they are part of the same controversy under 28 U.S.C. § 1367. UNUM and Arya (collectively, "Defendants") have moved to dismiss Neff's under Federal Rule of Civil Procedure 12(b)(6), arguing that all of Neff's claims are barred by the applicable statutes of limitations.

## II.    Factual Background

The following factual allegations set forth in Neff's Complaint are considered as true for the purposes of this 12(b)(6) motion. On November 2, 2001, Arya retained Neff as counsel under a contingency fee arrangement in order to pursue a claim against UNUM Provident Insurance Company for discontinuing payments of disability benefits to Arya. Compl. at ¶ 7 (ECF 1). Neff served a complaint on Arya's behalf on each of the three UNUM entities on October 14, 2002, and notified UNUM of the lawsuit and his representation of Arya by letter dated October 18, 2002. *Id.* ¶ 22–23. Two attorneys from the law firm of Post & Schell entered an appearance as counsel for UNUM in the case on October 24, 2002, and notified Neff of their representation of UNUM on October 28, 2002. *Id.* ¶¶ 25–26. Arya, however, sent a letter via fax and mail to Neff on October 29, 2002, directing Neff to "withdraw all proceedings . . . as soon as possible." *Id.* ¶ 31.

Neff alleges that at some point between when the 2002 complaint was served and when Arya instructed Neff to withdraw the suit against UNUM, "a representative of UNUM contacted Arya and advised him that if he would withdraw the lawsuit then UNUM would pay him disability benefits." *Id.* ¶ 26. Neff alleges that Arya's instruction to withdraw the lawsuit was a

consequence of the alleged communication between Arya and UNUM's representative.  *Id.* ¶ 31.

When Neff withdrew the lawsuit, he alleges that he asked one of UNUM's outside counsel,

Richard McMonigle, if UNUM was making any payments to Arya and "was advised that

[McMonigle] had no knowledge of any payments."  *Id.* ¶ 36.  The Complaint does not specify by

what means this communication took place or why Neff made this inquiry.

Neff further alleges that UNUM's actions were part of a "pattern and practice designed to

interfered with the attorney client relationship[s]" of its insureds.  *Id.* ¶ 60.  In the late 1990s and

early 2000s, Neff had obtained "substantial settlements" from UNUM on behalf of clients who

purchased non-ERISA, private disability insurance policies.  *Id.* ¶¶ 57–58.  UNUM therefore did

not want Arya to be represented by Neff because of its experiences with him as counsel for its

insureds.  *Id.* ¶ 59.  Around the time UNUM allegedly contacted Arya, UNUM also contacted

another one of Neff's clients, Susan Owens-Wolkowitz,[2] on several occasions while litigation on

her behalf was pending and later sent payments directly to her, contrary to Neff's directions.  *Id.*

¶¶ 61–62, 65.  Likewise, in 2012 and 2013, UNUM sent payments directly to two more of Neff's

clients, contrary to his instructions.  *Id.* ¶¶ 66–70.  Neff asserts that UNUM's practice of sending

checks directly to clients is has persisted from at least 2003 to the present, and was intended to

interfere with the contractual relationships between Neff and his clients.  *Id.* ¶¶ 64, 67, 69.

Twelve years later, on September 29, 2014, Arya contacted Neff and asked if Neff was

willing to bring claims against UNUM on his behalf regarding the amount of disability payments

he claimed he was receiving from UNUM.  *Id.* ¶ 33.  During that conversation, Arya informed

Neff that he had been receiving disability benefits from UNUM for the past twelve years—ever

since the 2002 lawsuit was withdrawn.  *Id.* ¶ 34.  Neff alleges that this conversation was "the

---

[2] It seems this name is misspelled in the Complaint, as it appears as both "Owen" and "Owens."

first indication that Neff had that UNUM had made payments to Arya," and the Complaint describes no other communications with Arya in the intervening period. *Id.* ¶ 35. Although Arya's 2002 lawsuit was withdrawn, Neff alleges that the contingency fee agreement between him and Arya requires Arya to pay a contingent fee to Neff of 20% of the gross payment for continuing monthly payments and 40% of the gross amount of payments. *See* Compl. at ¶ 38.

## III. The Parties' Contentions

The parties agree that the statute of limitations for Plaintiff's Pennsylvania state-law claims is two years, and for the RICO claim is four years. *See* 42 Pa. C.S.A. § 5524 (fraud); *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987) (RICO); *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004) ("Pennsylvania courts apply the two year statute of limitations of 42 Pa. C.S.A. § 5524(3) to tortious interference with contractual relations claims." (citing *Bednar v. Marino*, 646 A.2d 573, 577 (Pa. Super. Ct. 1991))); *In re Asbestos Sch. Litig.*, 768 F. Supp. 146, 150 (E.D. Pa. 1991) ("[I]n Pennsylvania a cause of action for civil conspiracy adopts the statute of limitations applicable to the overt act allegedly committed in furtherance of the conspiracy."); *Sabella v. Appalachian Development Corp.*, 103 A.3d 83, 92 & n.3 (Pa. Super. Ct. 2014) (applying § 5524(3) to conversion claims). What the parties disagree on is exactly when Plaintiff should have gained knowledge of the alleged injury.

## A. Defendants' Contentions

UNUM and Arya have both raised a statute of limitations defense as to all claims, arguing that the limitations period began to run in 2002 and therefore all claims are time-barred. Defendants contend that taking the allegations of the Complaint as true, the "settlement" between UNUM and Arya—and thus the alleged injury due to loss of Neff's contingency fee—occurred

on or immediately after October 29, 2002. *See* Compl. ¶¶ 26, 31 (ECF 1). According to Defendants, when Arya asked Neff to withdraw the lawsuit in 2002, Neff, as Arya's attorney and as a professional who is expected to exercise reasonable diligence, should have asked his client about why he wished to withdraw the case. UNUM Defs.' Mot. Dismiss 5–7 (ECF 12); Def. Arya's Mot. Dismiss 8–9 (ECF 13). Likewise, although UNUM's outside counsel advised Neff that he had no knowledge of UNUM making payments to Arya, Neff did not take any further steps to verify this information with his client. UNUM Defs.' Reply 8–9 (ECF 16). Therefore, even a minimal inquiry in 2002 would have alerted Neff to the alleged misconduct, and neither the discovery rule nor the fraudulent concealment exceptions toll the statute of limitations for Neff's claims. Defendants also contest Neff's assertion that special statute of limitations rules apply to his intentional interference with contractual relations, civil conspiracy, and concert of action claims. *Id.* at 9–10; Def. Arya's Reply 6 (ECF 18).

## B.    Plaintiff's Contentions

Neff argues that the statute of limitations is tolled by either the discovery rule or because Defendants fraudulently concealed their conduct. Neff contends that because he was misled by both UNUM and Arya, he had no reason to inquire further as to why Arya wished to withdraw his case. Neff asserts that in 2002, when UNUM's outside counsel "advised that he had no knowledge of any payments" to Arya, this misrepresentation prevented Neff from conducting further inquiry and from discovering the alleged injury. Pl. Resp. Opp'n UNUM's Mot. 7–8 (ECF 14); Pl. Resp. Opp'n Arya's Mot. 9–10 (ECF 17); *see* Compl. ¶ 36 (ECF 1). Neff further argues that Arya's instruction to withdraw the lawsuit was a misrepresentation that Arya had decided to stop pursuing his rights, when in fact Arya had made a "quid pro quo agreement with UNUM." Pl. Resp. Opp'n UNUM's Mot. 7–8 (ECF 14); Pl. Resp. Opp'n Arya's Mot. 9–10

(ECF 17).  Neff claims he justifiably relied on Defendants' acts and was not able to discover the alleged injury until Arya notified him in 2014 that UNUM had been paying Arya disability benefits since 2002.  Pl. Resp. Opp'n UNUM's Mot. 7–8 (ECF 14); Pl. Resp. Opp'n Arya's Mot. 9–10 (ECF 17).  Neff also contends that special accrual rules apply to his intentional interference with contractual relations, civil conspiracy, and concert of action claims.  Pl. Resp. Opp'n UNUM's Mot. 8–10 (ECF 14); Pl. Resp. Opp'n Arya's Mot. 10–11 (ECF 17).

## IV.     Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) is designed to test the sufficiency of a complaint. To survive a motion to dismiss, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating a motion to dismiss, the court accepts all factual allegations as true and construes them "in the light most favorable to the plaintiff." *Philips v. County of Allegheny*, 515 F.3d 224, 228 (3rd Cir. 2008).  The plaintiff must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "[B]are assertions," mere "recitation" of the law, or conclusory allegations are "not entitled to the presumption of truth." *Id* at 680–81.  When considering a motion to dismiss, the court must limit its review to "the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010).

A party may raise an affirmative defense based on the statute of limitations if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F. 3d 241, 249 (3rd Cir. 2014) (quoting *Robinson*

*v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002)).  The standard for dismissing a complaint based on a statute of limitations defense is strict in the Third Circuit; it must be "apparent on the face of the complaint" that the claim is time-barred.  *Id.*  (quoting *Robinson*, 313 F.3d at 134–35).

## V.    Analysis

State law statute of limitations principles govern Neff's state-law claims, but federal law governs Neff's RICO claim.  *See Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008) (*Erie Railroad Co. v. Tompkins* choice of law rules apply to state-law claims over which a court exercises supplemental jurisdiction).  The Court will address them separately.

## A.    Neff's State-Law Claims

Under Pennsylvania law, a cause of action accrues when the right to institute and maintain a suit arises.  *Pocono Int'l Raceway, Inc. v. Pocono Produce*, 468 A.2d 468, 471 (Pa. 1983).  The limitations period will start running once the action accrues.  *See Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005).  Neff argues that two exceptions to this rule—the discovery rule and fraudulent concealment—make his state-law claims timely.

### 1.    The Discovery Rule

The discovery rule allows a plaintiff to suspend the statute of limitations until he or she "knows, or reasonably should know" of the alleged injury and its cause.  *Bohus v. Beloff*, 950 F.2d 919, 924 (3rd Cir. 1991) (quoting *Cathcart v. Keene Indus. Insulation*, 471 A.2d 493 (Pa. Super. Ct. 1984)).  It applies "when a plaintiff, despite the exercise of due diligence, is unable to know of the existence of the injury and its cause."   *Id.*  When applying the discovery rule, a court "must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he or she has been injured and by what cause."  *Gleason v. Borough of Moosic*, 15

7

A.3d 479, 485 (Pa. 2011) (quoting *Fine*, 870 A.2d at 858–59).  Put another way, the focus is on the plaintiff's ability to ascertain the facts underlying the cause of action rather than on "a retrospective view of whether the facts were *actually* ascertained within the [limitations] period."  *See Pocono* 468 A.2d at 471–72.   Accordingly, "lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations."  *Id.* at 471.

Neff therefore must demonstrate that, despite "reasonable diligence," he was unable to discover his injury.  *Wilson v. El-Daief*, 964 A.2d 354, 363, 366 n.12 (Pa. 2009).  The level of diligence that a party must exercise is the one "a reasonable man would employ under the facts and circumstances presented."  *Crouse v. Cylops Indus.*, 745 A.2d 606, 612 (Pa. 2000).  "The question is: what might the party [would] have known, by the use of the means of the information within his reach, with the vigilance the law requires of him?"  *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005) (quoting *Cochran v. GAF Corp.*, 666 A.2d 245, 249 (Pa. 1995)) (internal quotation marks omitted).  Although Pennsylvania's formulation of the discovery rule "places greater burden upon Pennsylvania plaintiffs vis-à-vis the discovery rule than most other jurisdictions," it does not impose an "all-vigilance" standard.  *Wilson v. El-Daief*, 964 A.2d 354, 362 (Pa. 2009).  Rather, the plaintiff must demonstrate "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others" in investigating his claim.  *Cochran v. GAF Corp.*, 666 A.2d 245, 249 (Pa. 1995) (quoting *Baumgart v. Keene Bldg. Prods. Corp.*, 666 A.2d 238, 244 (Pa. 1995)) (internal quotation marks omitted).

With these principles in mind, the Court will now focus the inquiry on whether Neff knew or should have known of UNUM's and Arya's conduct by November 21, 2012—two years before he filed his Complaint.  When evaluating Neff's reasonable diligence to discover his

injury, the Court takes into account that Neff is a sophisticated party.  *Id.* ("Despite the objective nature of the reasonable diligence standard, '[i]t is sufficiently flexible, however, to take into account difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question.'" (alteration in original) (quoting *Baumgart v. Keene Bldg. Prods. Corp.*, 666 A.2d 238, 244 (Pa. 1995))).  Neff is an experienced attorney who had had expertise in legal matters and "who had successfully prosecuted claims against UNUM" before he began his relationship with Arya.  Compl. ¶ 58 (ECF).  Any reasonable and diligent attorney in Neff's position would have asked the client about the reason behind the abrupt withdrawal of the 2002 lawsuit and attempted to verify information received from opposing counsel about the client.

Moreover, given the terms of the contingency fee agreement Neff entered with Arya and the value of Arya's claim, it is particularly surprising that Neff did not ask his own client why he wished to withdraw the 2002 lawsuit.  The contingency fee agreement Neff has attached to his Complaint entitled him to 40% of any "gross sum secured by" him on Arya's behalf, as well as established an ongoing relationship under which Arya would pay Neff 20% of any "continuing benefits."  Compl. Ex. 1 (ECF 1-1).  The 2002 complaint alleged that UNUM owed Arya a sum "in excess of Fifty Thousand ($50,000) Dollars" and alleged that the UNUM policy provided for a monthly benefit of $4,100 through Arya's 65th birthday.  Compl. Ex. 2 (ECF 1-1).  Indeed, Neff alleges that UNUM has paid Arya approximately $1.2 million pursuant to their settlement, of which he claims he was owed approximately $240,000. Compl. ¶ 55.  When these large potential profits vanished as a consequence of Arya's instruction to withdraw the lawsuit, however, Neff did not ask his client for the reason he wished to terminate the relationship or take other steps to discover the reason for the loss of such a lucrative agreement.

Neff also admits that he had, at a minimum, some knowledge of UNUM's interfering conduct.  The 2002 complaint Neff drafted on behalf of Arya stated that UNUM and Arya had numerous telephone conversations regarding Arya's claim, which included settlement negotiations.  Compl. Ex. 2 (ECF 1-1).  Furthermore, Neff also had reason to know that UNUM was contacting and sending checks directly to another client, Ms. Owens-Wolkowitz.  In her affidavit Neff attaches as an exhibit to his Complaint, Owens-Wolkowitz states:

> "When the case was settled, UNUM sent the check for past due benefits to me *and I forwarded it to my lawyer.*  They sent the check for the first month of the continuing benefits to me.  I had previously advised UNUM to make all payments to me through my lawyer so that he could monitor their actions and *my lawyer sent the two letters concerning this matter* as well.  I was also contacted on multiple occasions during the time the litigation was unresolved by the claim [sic] department for UNUM.  Each time that I was contacted by telephone, I advised the UNUM representative that I was represented by an attorney and that they had no right to contact me directly and should not do so.  *I believe that the direct contact from the UNUM representative took place in late 2002 and 2003*."

Compl. Exhibit 16 (ECF 1-3) (emphasis added).    Indeed, Neff was suspicious enough about Arya's sudden withdrawal of his case that he asked UNUM's outside counsel whether UNUM was making payments to Arya—yet Neff did not follow up with Arya after UNUM's counsel told Neff he had "no knowledge of any payments."  Compl. ¶ 36.

The Court concludes that Neff's asserted lack of actual knowledge does not suffice to trigger the discovery rule.  Compl. ¶ 35.  Even taking all of the allegations in the Complaint as true and in the light most favorable to him, Neff, as a sophisticated party, should have suspected that UNUM might have exhibited the same *modus operandi* with Arya as with Owens-Wolkowitz and continued its direct communications with Arya about settlement after Neff undertook the representation.  A reasonable and diligent attorney would have asked a simple "why" in response to Arya's demand to withdraw the lawsuit, and would not have been satisfied with opposing counsel's response that he had "no knowledge" of payments.  Had Neff inquired

further of his client or opposing counsel, he could have discovered his injury at some point soon after they occurred in 2002.

### 2.    Fraudulent Concealment

The doctrine of fraudulent concealment tolls the running of the statute of limitations where "fraud has caused plaintiff to relax his vigilance or deviate from his right of inquiry." *Baselice v. Franciscan Friars Assumption BVM Province*, Inc., 879 A.2d 270, 278 (Pa. 2005). A plaintiff must "at least plead[] the applicability of the doctrine to survive a motion to dismiss based on a statute of limitations defense." *Arndt v. Johnson & Johnson*, 67 F. Supp. 3d 673, 679 (E.D. Pa. 2014) (quoting *Perelman v. Perelman*, 545 Fed. Appx. 142, 151 (3rd Cir. 2013). Fraudulent concealment is subject to Rule 9(b) pleading specificity requirements. *Id.* (citing *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984).

For the fraudulent concealment doctrine to apply, there must have been an "affirmative independent act of concealment" by a defendant "upon which the plaintiff justifiably relied" to cause him or her to relax his or her vigilance. *Baselice*, 879 A.2d at 278.  The same "reasonable diligence" standard used to determine the applicability of the discovery rule exception applies to the fraudulent concealment exception. *Fine v. Checcio*, 870 A.2d 850, 861 (Pa. 2005).  A plaintiff's reliance on the defendant's actions must also be reasonable and justifiable. *DeMartino v. Albert Einstein Medical Center, Norther Div.,* 460 A.2d 295, 302 (Pa. 1983).  When a plaintiff relies on the defendant's conduct but "has reason to believe otherwise," the statute of limitations will not be tolled, as his or her reliance was not reasonable. *Arndt*, 67 F.Supp. 3d at 678 (citing *DeMartino*, 460 A.2d at 302).  It has also been recognized that silence can constitute fraudulent concealment "only where there [was] an affirmative duty to disclose because of a fiduciary

relationship between the parties or a similar relationship of trust and confidence." *Mest v. Cabot Corp.*, 449 F.3d 502, 517 (3d Cir. 2006).

Neff bases his fraudulent concealment argument on two facts alleged in the Complaint: 1) the statement by UNUM's outside counsel that he had "no knowledge" of UNUM's payments, Compl. ¶ 36 (ECF 1), and 2) Arya's failure to disclose the payments from UNUM until 2014, *id.* ¶¶ 31, 35. Neff argues that because he relied on these actions by UNUM's counsel and Arya, no further inquiry was necessary.

Arya, however, did not perform any an affirmative acts of concealment. Arya was not a fiduciary who had an affirmative duty to volunteer his reasons for ending Neff's representation; on the contrary, he had the right to terminate his attorney-client relationship with Neff for any reason. *Ryan v. Butera, Beausang, Cohen & Brennan*, 193 F.3d 210, 219 (3d Cir. 1999) ("[I]n Pennsylvania '[t]he right of a client to terminate the attorney-client relationship is an implied term of every contract of employment of counsel . . . .'" (quoting *Hiscott v. Robinson*, 626 A.2d 1235, 1237 (Pa. Super. Ct. 1993)); *Mager v. Bultena*, 797 A.3d 948, 956 (Pa. Super. Ct. 2002) (same). Arya's failure to disclose his reasons for withdrawing the 2002 case and ending his relationship with Neff therefore do not toll the statute of limitations under the fraudulent concealment doctrine.

UNUM's counsel's statement regarding his lack of knowledge of any disability payments to Arya also should not have relaxed Neff's vigilance. There is a difference between opposing counsel saying "UNUM is not making any payments" and, as Neff avers in his Complaint, opposing counsel asserting "no knowledge of any payments." Compl. ¶ 36. While the first expression implies knowledge and affirms a fact based on that knowledge, the latter provides no real facts.

Even if Neff took opposing counsel's statement to mean that UNUM was not in fact sending payments to Arya, however, a reasonable person in Neff's position would have confirmed opposing counsel's representation with his client for the same reasons the discovery rule does not apply in this case. According to the Complaint, there was a negative history between UNUM and Neff around the time that Arya withdrew his lawsuit, and Arya and UNUM had previously been in direct contact regarding settlement of Arya's claims. *Id.* ¶ 58; Compl. Ex. 2 (ECF 1-1). Ms. Owens-Wolkowitz avers that she forwarded checks received from UNUM to Neff, and Neff had to remind UNUM twice via letter not to contact her directly. Compl. Ex. 16 (ECF 1-3). Taking all allegations in the Complaint as true and in the light most favorable to Neff, a reasonable and diligent attorney in Neff's position still would not have relaxed his vigilance in investigating his injury based on either Arya or UNUM's conduct. The fraudulent concealment doctrine therefore does not toll the statute of limitations in Neff's situation.

Finally, no special rules need to be applied in this case under Pennsylvania law. The case Neff cites regarding accrual of claims for intentional interference with contractual relationships employed the same "reasonable diligence" standard on which the Court relies above. *Colonial Assurance Co. v. Mercantile & Gen. Reins. Co.*, 297 F. Supp. 2d 764, 770 (E.D. Pa. 2003). As for civil conspiracy and concert of action, plaintiff cites *Commonwealth v. Fabrizio*, 176 A.2 142, 147–48 (Pa. Super. 1964) to point out that "in those cases where there are continuous and repetitious overt acts or trespasses as part of a continuing conspiracy, it has been held that the statute of limitations does not begin to run until after the commission of the last of the conspiracy." The only conspiratorial act that Neff is alleging against both UNUM and Arya occurred in 2002, when UNUM contacted Arya and asked him to withdraw the lawsuit. The injury Neff alleges (i.e., loss of his contingency fee because of a civil conspiracy between

defendant UNUM and Arya) occurred as a consequence of the withdrawal of the 2002 lawsuit, which took place in 2002. Accordingly, the last act of the alleged conspiracy between defendants happened in 2002.

**B.  RICO**

"[C]ivil RICO actions are subject to the 4–year limitations period . . . that governs private civil antitrust actions seeking treble damages" under the Clayton Act. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 183 (1997). The statute of limitations on a RICO claim begins to run "when plaintiffs knew or should have known of their injury." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006). Importantly, however, a plaintiff need have notice that a defendant is engaging in a pattern of racketeering activity prohibited under RICO for the statute of limitations to begin running. *Rotella v. Wood*, 528 U.S. 549, 558–60 (2000). When a plaintiff should have known about his or her injury "depends on whether [and when] they had sufficient information of possible wrongdoing to place them on 'inquiry notice' or to excite 'storm warnings' of culpable activity."[3] *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 (3d Cir. 2006) (alteration in original). The Court therefore concludes that the same analysis applies to Neff's RICO claim as his state-law claims, and the four-year statute of limitations for this claim began to run at or around the time Arya withdrew his 2002 case. Consequently, the Court will also dismiss Neff's RICO claim.

**C.  Dismissal with Prejudice**

A district court is generally required to grant leave to amend claims it dismisses on a 12(b)(6) motion, but need not do so if amendment would be "inequitable or futile." *Phillips v.*

---

[3] Storm warnings are defined as "financial, legal or other data that would alert a reasonable person to the probability that misleading statements or significant omissions had been made" by

*Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  Futility of amendment is evaluated under the 12(b)(6) standard.  *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010).  The Court will dismiss Neff's claims with prejudice because amendment in this case would be futile to overcome the applicable statutes of limitations.  The inclusion of additional facts would not make it plausible that with the exercise of reasonable diligence, Neff still could not have discovered his state-law claims until after November 21, 2012, or his RICO claim until after November 21, 2010.

## VI.    Conclusion

This court will grant Defendants' motions because no reasonable minds could differ on whether Neff, as a sophisticated party, could have discovered his injury with reasonable diligence at the time or shortly after it occurred in 2002.  Consequently, Neff's state claims are time-barred.  For the foregoing reasons, Defendants' Motions to Dismiss are **GRANTED WITH PREJUDICE.**

An appropriate order follows.

O:\CIVIL 14\14-6696 neff v. unum\14cv6696.MTD Memorandum.doc

---

a defendant.  *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, 543 F.3d 150, 162 (3d Cir. 2008) *aff'd sub nom. Merck & Co. v. Reynolds*, 559 U.S. 633 582 (2010).